UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

|  |  |
|---|---|
| FRANK NOVAK AND SONS, INC. d/b/a BARRISOL USA, : : : | CASE NO. 1:23-cv-689 |
| Plaintiff, : : | ORDER [Resolving Doc. 19] |
| v. : : | |
| BRADLEY DORHOLT, et al., : : | |
| Defendant. : | |

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

Plaintiff Frank Novak and Sons, Inc. d/b/a/ Barrisol, USA ("Barrisol") distributes stretched ceiling systems.[1] In this case, Plaintiff Barrisol sues a former employee and sues an arguable commercial competitor and says that the former employee broke an employment contract and misappropriated trade secrets. In suing the competitor, Defendant Cooledge, Inc. ("Cooledge"), Barrisol says the competitor interfered with its employment contract with former employee Defendant Bradley Dorholt ("Dorholt") and tortiously interfered with prospective business relationships. Barrisol also makes civil conspiracy claims against both Dorholt and Cooledge, Inc.

Defendant Sims moves to dismiss the suit for lack of personal jurisdiction.[2] Plaintiff opposes.[3]

For the following reasons, the Court **GRANTS** Defendant Sims' motion to dismiss.

---

[1] Barrisol's stretch ceiling product is "a suspended ceiling system with [a] lightweight fabric membrane that attaches to an outer track." Doc. 1 at 1.
[2] Doc. 19.
[3] Doc. 14.

Case No. 1:23-cv-689
GWIN, J.

## I. BACKGROUND

Plaintiff Barrisol operates as an Ohio corporation with Cuyahoga County, Ohio headquarters.[4] Plaintiff Barrisol employed Defendant Dorholt as Plaintiff's National Sales and Marketing Manager from September 28, 2017, until Dorholt resigned on October 13, 2022.[5] In that role, Dorholt promoted the sale of Plaintiff's stretch ceiling systems throughout the United States.[6]

Regarding Dorholt's responsibilities, Plaintiff Barrisol and Defendant Dorholt executed an employment agreement that arguably required Dorholt comply with certain non-disclosure, non-solicitation, and non-competition covenants for sixty months after his employment with Plaintiff terminated.[7]

Defendant Cooledge operates a lighting company, whose products are often combined with the specialized surface lighting fixtures it offers.[8] Beginning on or before September 13, 2021, Cooledge's CEO, Defendant Sims, began communicating with Defendant Dorholt. These communications involved a plan for Dorholt to lead a new Defendant Cooledge initiative to develop stretch ceiling products. This new ceiling product effort eventually become Defendant Velaria.[9]

According to Plaintiff Barrisol's complaint, Sims and Dorholt discussed plans to purchase Plaintiff's direct competitors; discussed supplying Cooledge with materials for

---

[4] Doc. 1 at 2.
[5] *Id.* at 4.
[6] *Id.*
[7] Doc. 1-1 at 4-6.
[8] Doc. 1 at. 6.
[9] Doc. 6 at 3.

- 2 -

Case No. 1:23-cv-689
GWIN, J.

stretched ceilings; discussed avoiding using employee Dorholt's work email at Barrisol; and discussed the restrictive covenants in Dorholt's employment agreement.[10]

In February 2023, Plaintiff Barrisol discovered communications between Sims and Dorholt while processing Dorholt's work laptop and after Dorholt's resignation.[11] At that time, Plaintiff also learned that competitor Cooledge, Inc. employed former employee Dorholt as a "Director of Products and New Market Expansion."[12] Plaintiff states that former employee Dorholt manages Velaria.[13]

On April 2, 2023, Plaintiff sued Dorholt, Sims, Cooledge, and Velaria.[14] Regarding individual defendant Sims, Plaintiff claims that Sims has misappropriated Plaintiff's trade secrets, tortiously interfered with Plaintiff's employment contracts and business relationship, and engaged in civil conspiracy.[15]

Now, Defendant Sims move to dismiss Plaintiff's suit against him, arguing that the Court lacks personal jurisdiction over him.[16]

## II. LEGAL STANDARD

A federal court enjoys personal jurisdiction over a defendant if the "relevant long-arm statutes authorize the exercise of personal jurisdiction over" the defendant and "exercise of that jurisdiction [also] comports with constitutional due process."[17] To survive a 12(b)(2) motion when the Court decides the motion based "solely on written submissions and affidavits," the plaintiff must make a *prima facie* showing that the court has personal

---

[10] *Id.* at 3-4.
[11] *Id.* at 2-3.
[12] Doc. 1 at 9.
[13] *Id.*
[14] *Id.*
[15] *Id.* at 11-17.
[16] Doc. 19.
[17] *Air Products & Controls, Inc. v. Safetech Intern., Inc.*, 503 F.3d 544, 550 (6th Cir. 2007).

Case No. 1:23-cv-689
GWIN, J.

jurisdiction.[18] The Court views the pleadings and affidavits "in a light most favorable to the plaintiff."[19]

The Sixth Circuit applies a three-part test to determine whether the exercise of specific personal jurisdiction comports with due process:

> "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable."[20]

The first requirement – that of purposeful availment – is satisfied when "the defendant's contact with the forum state proximately results from actions by the defendant *himself* that create a 'substantial connection' with the forum State, and when the defendant's conduct and connection with the forum are such that he should reasonably anticipate being haled into court there."[21]

The Supreme Court has held that intentional conduct occurring in one state which is calculated and aimed to cause injury in other state can be sufficient to satisfy personal jurisdiction.[22] In *Calder*, the Court found that Florida tabloid journalists were properly sued for libel in California, where the plaintiff lived. The tabloid had sold over 600,000

---

[18] *Id.* at 549.
[19] *Id.*
[20] *Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 505 (6th Cir. 2014) (quoting *Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.3d 34 381 (6th Cir. 1968).
[21] *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1263 (6th Cir. 1996) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985)) (citations omitted).
[22] *See Calder v. Jones*, 465 U.S. 783, 790-91 (1984).

- 4 -

Case No. 1:23-cv-689
GWIN, J.

copies in California, and the defendants knew that "the brunt of [the plaintiff's] injury would be felt there."[23]

The Sixth Circuit has applied the *Calder* "effects test" narrowly; "the mere allegation of intentional tortious conduct which has injured a forum resident does not, by itself, always satisfy the purposeful availment prong."[24]

In 2014, the Supreme Court revisited its *Calder* decision, explaining in *Walden v. Fiore* that the "crux of *Calder*" is the "reputation-based 'effects'" of the defendant's actions, coupled with the "various facts that gave the [libelous] article a California focus, sufficed to authorize the California court's exercise" of personal jurisdiction over the defendants.[25] "*Calder* made clear that the mere injury to a forum resident is not always a sufficient connection to the forum, rather the proper question is . . . whether the defendant's conduct connects him to the forum in a meaningful way."[26]

While the Sixth Circuit has not yet "define[d] the exact scope of *Walden* and its effect on *Calder*,"[27] its narrow *Calder* effects test application is consistent with the holding in *Walden*: that "an out-of-state injury to a forum resident, standing alone, cannot constitute purposeful availment."[28] "So pre- or post-*Walden*, there must be 'something more' than just mere injury to the plaintiff in the forum."[29]

---

[23] *Id.* at 785, 789-90.
[24] *Air Products & Controls, Inc.*, 503 F.3d at 552 (citing *Scotts Co. v. Aventis S.A.*, 145 Fed. App'x 109, 113, n.1 (6th Cir. 2005) ("[W]e have applied *Calder* narrowly by evaluating whether a defendant contacts with the forum may be enhanced if the defendant expressly aimed its tortious conduct at the forum and plaintiff's forum state was the focus of the activities of the defendant out of which the suit arises.").
[25] *Walden v. Fiore*, 571 U.S. 277, 287-88 (2014).
[26] *Id.* at 290.
[27] *MAG IAS Holdings, Inc. v. Shmückle*, 854 F.3d 894, 901 (6th Cir. 2017).
[28] *Id.* See *Zellerino v. Roosen*, 118 F. Supp. 3d 946, 952 (E.D. Mich. 2015) ("*Walden* does not undermine the Court's prior decision in *Calder v. Jones*; it merely refines it. Intentional acts may furnish the requisite 'minimum contacts' with a forum if the defendant intends to injure the plaintiff *there*.").
[29] *Vangeluwe v. Got News, LLC* 365 F. Supp. 3d 850. 858 (E.D. Mich. 2019).

Case No. 1:23-cv-689
GWIN, J.

### III. ANALYSIS

The Court does not have personal jurisdiction over Defendant Sims because Sims has not purposefully availed himself of acting or causing consequences in Ohio.

Plaintiff argues that Sims caused a consequence in Ohio by knowingly interfering with Plaintiff's Ohio headquartered business operations.[30] Further, Plaintiff states that Sims' conduct damaged its business reputation, that is "centered in Ohio because Ohio is the location of its base of operations."[31] Plaintiff relies on the language in *Calder* suggesting that if a defendant knows that its intentional acts will cause effects in a state, then that state may exercise personal jurisdiction over the defendant.[32]

However, Plaintiff identifies no other connection between Sims' conduct and Ohio, save its alleged injury. Sims has never been to Ohio nor conducted business there.[33] Dorholt's employment agreement with Plaintiff includes an Ohio forum selection clause.[34] However, the correspondence between Dorholt and Sims indicates that Sims became personally aware of any clause late into his planning with Dorholt.[35] And, Plaintiff's pleadings consistently say it is a company with a national and international focus.[36]

As the Supreme Court and the Sixth Circuit have held, "the plaintiff cannot be the only link between the defendant and the forum."[37] Because there is no sufficiently pled factual predicate between Sims and the state of Ohio, save for Plaintiff's injury, Sims did

---

[30] Doc. 24 at 9-10.
[31] *Id.* at 10.
[32] *Id.* at 10-11.
[33] Doc. 20-1.
[34] Doc. 1-1 at. 7.
[35] Doc. 6-6 at 3.
[36] *See, e.g.*, Doc. 1 at 3-4; Doc. 1-1 at 4.
[37] *Blessing v. Chandrasekhar*, 988 F.3d 889, 904 (6th Cir. 2021) (*quoting Walden*, 571 U.S. at 285).

Case No. 1:23-cv-689
GWIN, J.

not purposefully avail himself of the "benefits and protections" of Ohio's laws.[38] The Court does not have personal jurisdiction over Sims.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant Sims' motion to dismiss for lack of personal jurisdiction.

IT IS SO ORDERED.

Dated: September 11, 2023         *s/     James S. Gwin*
                                                          JAMES S. GWIN
                                                           UNITED STATES DISTRICT JUDGE

---

[38] *Id.*